**UNITED STATES v. MORGAN et al.**
Civ. No. 43–757.

United States District Court
S. D. New York.

May 25, 1950.

---◇---

### Pre-Trial Order No. 2

The undersigned having been designated by order of Honorable John C. Knox, now the Chief Judge but then Senior District Judge of this Court, dated the 13th day of February, 1948, to hear all motions and other matters preliminary to trial, to conduct all pre-trial procedure and to act as presiding judge at the trial of the cause; and Pre-Trial Order No. 1 having been made and filed on June 10, 1948; and various further proceedings having been had and substantial progress having been made in preparation for trial, as is more fully set forth in the subjoined memorandum which is hereby made a part of this order;

It is ordered

(1) That no further demands for admissions under Rule 36 of the Rules of Civil Procedure, 28 U.S.C.A., or otherwise shall be served by counsel for plaintiff upon counsel for any of defendants or upon the Committee appointed by Pre-Trial Order No. 1, except by leave of the Court and for good cause shown, and except as provided in paragraph (3) of this Order.

(2) That proofs of the documents delivered by counsel for plaintiff to the printer but not yet set up in type be delivered to counsel for defendants on or before June 1, 1950; that no further documents, in addition to the 10,640 documents already proffered by counsel for plaintiff for printing and authentication, be tendered by counsel for plaintiff; and that the authentication procedure now in effect be carried on with all reasonable diligence until each of said 10,640 documents has been processed.

(3) The dispute between the parties relative to the form and extent of the numerous demands contained in plaintiff's demands for admissions dated respectively July 15, 1949, November 2, 1949 and January 11, 1950, described during the hearings as "Paragraph 4 demands," having now been determined, these demands as reformulated and condensed shall be answered with all reasonable diligence by defendants to whom they are respectively addressed in accordance with directions given in the various hearings.

(4) The preparation and verification of charts and compilations by plaintiff and defendants respectively, in accordance with the basic statistical data heretofore stipulated by the parties shall proceed in the

manner already approved by the Court until the completion thereof.

(5) That no further interrogatories shall be addressed by any party to any other party or parties and no further depositions shall be taken on behalf of any party without leave of the Court and for good cause shown, except that the deposition of Leonhard Keyes now set for 10:30 A.M. on Monday, May 22, 1950, shall proceed and continue from day to day until concluded.

(6) That the trial of this action shall commence at 10:30 A.M. on Monday, October 9, 1950.

(7) That upon the conclusion of the presentation of plaintiff's case in chief, the trial shall be adjourned for a period of time to be fixed by further order of the Court.

(8) That sixty (60) days in advance of October 9, 1950, plaintiff shall furnish defendants with a list describing by number all documents which plaintiff intends to offer in support of its affirmative case on the merits and arranging such document numbers in an organized manner in accordance with plaintiff's theory of its case.

(9) That sixty (60) days in advance of the date fixed for the resumption of the trial defendants shall furnish plaintiff with a list describing all documents which each defendant intends to offer in support of his or its affirmative case on the merits together with copies of such documents; and the said list shall contain an arrangement of such documents, by number or other convenient description, in an organized manner in accordance with such defendant's theory of his or its case.

(10) That each party is entitled to move at any time for a clarification, or modification of this order or for an additional order.

Irving H. Saypol, United States Attorney, New York City, for plaintiff; Henry V. Stebbins, Walter K. Bennett, Mervin C. Pollak, Special Assistants to the Attorney General, Edgar A. Buttle, New York City, Daniel Reich, Harry G. Sklarsky, Julius E. Yokel, Francis E. Dugan, all of New York City, Robert W. Walter, Port Washington, N. Y., and James E. Branigan, Jr., Forest Hills, N. Y., trial attorneys.

Breed, Abbott & Morgan, New York City, for defendant Eastman, Dillon & Co.; H. A. Heydt, Jr., New York City, of counsel.

Cahill, Gordon, Zachry & Reindel, New York City, for defendants Dillon, Read & Co., Inc. and Stone & Webster Securities Corporation; Loftus E. Becker and David Ingraham, New York City, of counsel.

Cleary, Gottlieb, Friendly & Cox, New York City, for defendant Investment Bankers Ass'n of America; Hugh Cox, New York City, of counsel.

Covington, Burling, Rublee, O'Brian & Shorb, Washington, D. C., Attorneys for Defendant Smith, Barney & Co.; G. A. Gesell and W. G. Claytor, Jr., Washington, D. C., of Counsel.

Cravath, Swaine & Moore, New York City, Attorneys for Defendants Kuhn, Loeb & Co., and Union Securities Corporation; William Dwight Whitney, George Stephen Leonard, and Robert H. Lounsbury, all of New York City, of Counsel.

Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, Attorneys for Defendants Morgan Stanley & Co. and Harriman Ripley & Co., Incorporated; John W. Davis, Ralph M. Carson, Leighton H. Coleman, Francis W. Phillips, John E. Masten and George Edward Cotter, all of New York City, of Counsel.

Donovan, Leisure, Newton, Lumbard & Irvine, New York City, Attorneys for Defendant Harris, Hall & Company (Incorporated); Douglas V. Lewis, New York City, of Counsel.

Drinker, Biddle & Reath, Philadelphia, Pa. and Emmet, Marvin & Martin, New York City, Attorneys for Defendant Drexel & Co.; Henry S. Drinker, Philadelphia, Pa., of Counsel.

Shearman & Sterling & Wright, New York City, Attorneys for Defendant White, Weld & Co.; William F. Hamilton, New York City and Lauretta D. Robinson, New York City, of Counsel.

Sullivan & Cromwell, New York City, Attorneys for Defendants Blyth & Co., Inc., The First Boston Corporation, Glore, Forgan & Co., Goldman, Sachs & Co., and Leh-

man Brothers; Arthur H. Dean, William Piel, Jr. and Roy H. Steyer, all of New York City, of Counsel.

Webster, Sheffield & Horan, New York City, Attorneys for Defendant Kidder, Peabody & Co.; Bethuel M. Webster and Edward L. Rea, New York City, of Counsel.

MEDINA, District Judge.

On February 13, 1948, I was designated by Honorable John C. Knox, now the Chief Judge but then Senior District Judge of this Court, to preside at the trial, to hear and determine all motions and to supervise all pre-trial procedures in this case.

There are 130 individual defendants, 7 corporate defendants and one defendant is an unincorporated association. The action involves issues of great extent and complexity, including within its scope, according to the view of the government, practically the entire business of security underwriting carried on in the United States since 1915 by defendants and by others.

It was obvious at the outset, and was recognized by all concerned, that it would be impossible to administer the trial without pursuing extensive pre-trial procedures designed to meet the problems and to fit the circumstances of this particular case.

Twenty-seven pre-trial hearings have been held. At these hearings some fifteen motions of major import and numerous other motions have been argued and decided; certain depositions have been taken under the supervision of the Court; objections to interrogatories, to demands for admissions, and to responses thereto have been argued and decided; and the machinery for an expeditious and effective pre-trial procedure has been evolved and administered.

Pursuant to the provisions of the Pre-Trial Order No. 1, which I issued on June 10, 1948, ten thousand, six hundred and forty documents have been prepared by the plaintiff for submission at the trial; the procedure followed is roughly as follows: these documents are printed, each one with a caption stating what the parties have called the "authenticating facts"; proofs of the documents are submitted by the printer to the defendants; the defendants then check the "authenticating facts," making such changes in the body of the documents and in the captions as they deem appropriate; the defendants submit the corrected documents to the plaintiff; the documents are then printed in final form, with such corrections thereon as are agreed to by the government and the defendants and, where they disagree, the substance of the claims of both sides is printed on the documents; each side initials the final printed documents, thereby stipulating the "authenticating facts" printed in the captions; the documents are then arranged in loose-leaf binders, ready for trial.

Five thousand, eight hundred and twenty-three documents, totalling twenty-five thousand, three hundred six printed pages are in final form ready for trial. Another eleven thousand, forty-six printed pages have been delivered by the printer to the several defendants for authentication by them. Two thousand, six hundred nine documents are presently being processed by the defendants in proof form. A number of other documents have been the subject of negotiations between the parties, and are now all but ready for final printing. In some cases, defendants have failed to authenticate documents, and the Court has heard argument on and decided whether such refusal was justified. One thousand, one hundred and forty-six documents have yet to be delivered to the defendants by the printer. This balance will be delivered on or before June 1, 1950.

When this process is completed, the documents upon which the plaintiff bases its case and intends to rely at the trial will be fully disclosed to the defendants, will be in printed form and conveniently arranged for the purposes of the trial, and the authenticity of almost all of them will have been stipulated, so that the trial may proceed expeditiously to the merits without delay caused by purely formal matters.

Although the document authentication process is itself an achievement of real significance, the parties have gone much farther and have given the fullest cooperation in complying with a number of suggestions by the Court, which were made in an effort,

if possible, to confine the duration of the trial to a period of not more than one year and, in any event, to avoid what seemed at the outset to be the likelihood that the trial would continue for several years. For example, early in the course of these proceedings it became apparent that there were no compiled statistics either accurately or adequately covering the flotation of security issues in the United States. Since both sides contemplated the necessity of introducing extensive statistical studies, charts, and compilations at the trial, defendants agreed to prepare and to settle, by negotiation with the government over disputed details, basic statistical data which would form the foundation for the preparation of those charts, compilations and studies. Accordingly, a comprehensive compilation of all relevant facts on security issues of any importance during the period 1935-1949 has been prepared and stipulated. It has been stated on behalf of defendants that the cost to defendants of this single item of preparation for the trial has been not less than $350,000. And the expense to the government must have been very substantial. How long it would have taken to accomplish this work without the earnest efforts of all interested parties and their counsel, I cannot estimate. Thirty-six volumes of issue data sheets, each containing some two hundred pages dealing with the size, nature, offering price, rating and underwriting of security issues, as well as with numerous other facts, are ready for trial. Eleven volumes of issue register lists contain the facts on almost every security issue of over $100,-000 since 1935 and these are also ready for trial. It is a tribute to counsel that they were able to complete this gargantuan task and at the same time to carry out the other pre-trial procedures described herein.

Depositions by twenty individuals have been taken. The testimony covers six thousand, eight hundred and fifty-seven printed pages.

Twenty-two demands for admissions were also served by plaintiff during this period. These demands cover a multitude of details concerning the activities of the various defendants since 1915. Many objections to these demands were presented to the Court; some of the objections were disposed of by the parties themselves, and others were ruled on by me. The complexity and scope of these demands are exemplified in the most recently negotiated demand, which, after repeated conferences between the parties, and after repeated revision, totals over four hundred separate items of fact as to which admissions are sought.

Many stipulations have been entered into by the parties and the approval of the Court is given to the stipulations of the following dates, which are of considerable importance in the trial of this action; July 28, 1949, November 2, 1949, and January 11, 1950 concerning initialling of documents under the committee procedure; September 20, 1949 and March 28, 1950 concerning basic statistical data; March 30, 1950 concerning plaintiff's answers to interrogatories; April 19, 1950 and May 17, 1950 concerning authenticity of documents from the files of Dillon-Read & Co., Inc.; and May 5, 1950 concerning the plaintiff's demand for admissions of April 10, 1950. There are other stipulations of a procedural nature which need not be enumerated here, but which are also approved.

Not all the pre-trial procedures are completed. Six matters of importance remain to be completed before the pre-trial phase of the case is finished. These are:

(1) Authentication by the Committee, in accord with the provisions of Pre-Trial Order No. 1, of documents heretofore delivered to the printer by the plaintiff and not yet delivered to the Committee; and of documents heretofore delivered to the Committee as to which the authentication process is not complete.

(2) Responses by defendants to certain amended demands for admissions, which the parties have denominated the "Amended Paragraph 4 demands" (see paragraph 3 of annexed order).

(3) Preparation by the respective parties and verification of various statistical charts based on the stipulated "Basic Statistical Data."

(4) Taking on May 22, 1950 of the deposition of Leonhard Keyes by plaintiff.

(5) Verification by defendants of the autenticity of certain underwriting agreements, heretofore submitted and to be submitted by the plaintiff to defendants.

(6) Gathering of statistics and preparation of basic statistical data on Public Sealed Bidding from 1935 to 1949.

Since March 1, 1950 pre-trial hearings have been held on March 9, March 16, March 23, March 30, April 13, April 20, May 15, May 16 and May 18, nine hearings in all. It has been the purpose of these hearings to bring the pre-trial phase of the case to a close. In this endeavor the parties again demonstrated the cooperation which they had previously shown. Numerous disagreements have been negotiated by the parties in an effort to lighten the Court's burden, and many others in the course of the discussions have disappeared. The remainder have been disposed of by the 'Court. The end result is that, except for the six matters which remain to be completed, the pre-trial proceedings are complete, and the time has come to declare them to be over and to fix a date for the commencement of the trial. This has been done.

By September 15, 1950, or thereabouts, the unfinished matters will doubtless have been completely processed in accordance with the elaborate pre-trial procedures adopted herein; and, at that time, further pre-trial hearings will be had in an endeavor to establish, if possible, special trial techniques for use in connection with the introduction of evidence, the argument of objections and so on. This can better be done after the work of preparation has been completed.

At the outset it was my intention to make every effort to require, as part of the pre-trial procedure, the production and authentication of substantially all the documents to be introduced by any party at the trial. But the vast scope of the issues indicated, not only by the allegations of the complaint, but more particularly by the answers made by plaintiff to interrogatories submitted by defendants and the seemingly unprecedented variety, number and volume of documents tendered by plaintiff, made it clear to me that a duplication of this procedure as to documents to be offered by each of defendants would in all probability consume the greater part of an additional year, which seemed under all the circumstances utterly unreasonable. Accordingly, after much discussion and deliberation it was determined that there be an interval between the conclusion of plaintiff's case in chief and the submission of proofs by defendants, should the motions to dismiss at the close of plaintiff's case be denied, and that defendants be required to furnish plaintiff, not later than 60 days before the resumption of the trial, with a list of all documents to be offered in support of defendants' affirmative case, together with copies thereof. Many considerations seemed to make such a ruling desirable, not the least of which was that the winnowing process of the trial would almost certainly cut down to some and perhaps a great extent the number of plaintiff's documents actually to be received in evidence and, consequently, reduce the number of documents to be offered by defendants. Indeed, unless some way be found to confine within reasonable bounds the material to be read and studied by the Court, the determination of the issues by the ordinary process of absorption and ratiocination will be a physical impossibility.

Only time will tell whether this device of a divided trial and postponement of delivery of the documents to be offered by defendants shall prove to have been a wise expedient. At best it will result in a great saving of time for all concerned; at worst it will cause some slight delay before the resumption of the trial, in order that plaintiff be fairly and reasonably advised before defendants' proofs are offered.

In conclusion, I desire to express to all the lawyers representing the respective parties, who have accomplished the unique results I have described above, my sincere appreciation of what they have done. Without their cooperation, this case might have become hopelessly bogged down in pre-trial procedures.